Thank you. Good morning, Your Honors. May it please the Court, my name is Robert Thurbon, and may I reserve approximately five minutes for rebuttal. I'll help you. Thank you very much, Your Honor. I appear respectfully requesting that this Court first find jurisdiction under the collateral order doctrine to do an interlocutory review of the district court's disqualification order and then to thereafter reverse that order. Addressing first the Court's notice to counsels to be prepared to argue the issue and discuss the issue of jurisdiction concerning an interlocutory review, I believe that the specific question that goes to the limited class of orders that this case represents is whether a court's finding of a violation of specific rules of professional conduct based on a client's decision to disclose what may arguably be confidential information, to use in his case, to seek to use to his advantage, and the court's subsequent disqualification of an attorney for implementing the disclosure qualifies for immediate appeal under the collateral order doctrine. Counsel, can I just ask you about the jurisdiction issue? It appears that the Supreme Court has said that in Richardson Merrill v. Kohler that we do not have jurisdiction to review a disqualification. What's your response to that authority? The Supreme Court enacted or gave us in 2009 the Mohawk Industries v. Carpenter decision, 558 U.S. 100. The Richardson Merrill case, Your Honor, preceded this Court's holding in U.S. v. and I may butcher this name, and I apologize, but I think it's Talal. That's how I pronounce it. All right. Thank you, Your Honor. And that was in 2000, and that was subsequent to the Richardson Merrill holding. But Talal doesn't even cite the Richardson Merrill. That is correct, Your Honor, but a year prior you had the Cunningham decision, which preceded the Mohawk decision, which I will discuss in a minute, dealing with monetary sanctions and a Rule 37 monetary sanction. In that ---- Sanctions, sanctions, disqualifications. I would agree with you that if this case is viewed as a case of sanctions, we would have jurisdiction under the collateral order doctrine, but the disqualification part of it appears to be beyond our jurisdiction. It is not beyond the Court's jurisdiction as long as the three elements, the three colon elements are in place, and that's when you get to the 2009 Supreme Court case of Mohawk Industries. They offer valuable clarification. Did you say that in your brief, Mohawk Industries? I did not, Your Honor. In your brief, just by way of explanation. Yes, I gave you that. Just by way of explanation in the brief, we relied upon that. Talal case, and upon the Court's notice, I did an in-depth study of this issue to be prepared to discuss the whole parameters. Counsel, Talal is a criminal case, and the government was sanctioned in that case. The government has no right to appeal except very limited to a couple of instances. Do you attribute any significance to that, making it appealable in that case, whereas it wouldn't in this typical civil case? I don't attribute a lot of emphasis on that particular issue because there are some limited rights to appeal in a criminal case because of the rationale, the issue of the third question under the Cohen Doctrine, whether or not something is effectively reviewable. The problem is that the Supreme Court dealt with the Cohen Doctrine argument in both Richardson-Merrill and Cunningham and rejected it. I mean, the problem I have with Talal, and I hadn't thought about Judge Rice's distinction with regard to limited rights of appeal by the government in a criminal case, the problem with Talal is it doesn't cite to either Richardson-Merrill or Cunningham. And maybe Judge Rawlinson and I will have a disagreement about this, but I read Cunningham to say that even if it's an order imposing sanctions, it's not interlocutorally appealable. So if you can't appeal a disqualification and you can't appeal an order imposing sanctions, what's left? You can't appeal. Your Honor, I believe that you can appeal if you jump to the Mohawk Industry Carpenter case, the 2009 U.S. Supreme Court case, which was a discovery order, and it was taken by the Supreme Court to resolve the conflict concerning the availability of collateral appeals in an attorney-client privilege context. But what language, could you point me to the particular language in Mohawk Industries that you think supports our jurisdiction over disqualification? The important clarification was the third element of the Cohen question. What page are you reading from in Mohawk Industries? I'm reading from ‑‑ I don't have the specific page. I can find it quickly, Your Honor, but I don't have the specific page noted on this passage. But it's the third ‑‑ The third Cohen question. Cohen question. Whether a right is effectively reviewable. And in that case, the Supreme Court told all of us that the judgment ‑‑ this requires the courts to make a judgment about the value of the interest lost through a rigorous application of a final judgment requirement. But that's a general ‑‑ that's general guidance in determining the finality of a judgment, or whether it's collateral. But we have specific language in Richardson that says you can't ‑‑ that we can't review disqualification. So, you know, I've been taught that specific controls over the general. So what you're citing to me is general language that doesn't trump the specific language. And then the court in Mohawk, Your Honor, to respond to that directly, went on to say the Supreme Court in 2009 said the decisive consideration is whether delaying review until the entry of final judgment will imperil a substantial public interest or some particular value of high order. That's still general language. But it still implements the three ‑‑ it addresses the three prongs that is necessary for application for this court to take jurisdiction under the collateral. How did we get around our decision in Stanley v. Woodford where we concluded that an attorney could not interlocutorily appeal a sanctions order? That was an extension to ‑‑ your Stanley case, Your Honor, was an extension of Cunningham to the 28 U.S.C. 1927 sanctions or monetary sanction. In that case, the court, your decision, found that because it was the monetary sanctions, it was the second question in Cohen was at issue. The sanction order was inextricably intertwined with the merits of the case. That's how I read your Stanley decision. That's why this court rejected the three prongs of the ‑‑ Cohen had not been met because of number two. In this case, we have the conclusiveness of the district court's order. We also have the separateness. It's not connected and intertwined. The only issue remaining is the third element of that. But you're ignoring one factor that the Supreme Court cited in both Cunningham and Richardson Merrill, and that is the resulting delay that prejudices your now former client in that his case has been indefinitely stayed by the district court with the filing of your notice of appeal to come here. And his Title VII case cannot go forward until after we resolve your appeal. And the Supreme Court said that what has to control here is not the interest of the lawyer, but the interest of the client, which is an expeditious resolution of the underlying claim on the merits. Ultimately, the interest of the client prevails. But the issue is the client's interest in his own appeal, ultimately. The separateness of the issue, and I believe if I recall correctly, Your Honor, the Supreme Court in discussing that was responding to a question about what if the client gets a favorable result? What if there's a lack of incentive? What if there's to bring an appeal? That was the argument put forth by counsel then. And the Supreme Court, if I remember right, in this case... I'm not sure you're responding to my question. I mean, there is no question but that Mr. Lyle's case is being stayed in the Eastern District of California as a result of this appeal. So he's being harmed by delay. And the simplest way to address the harm to your former client is to simply dismiss your appeal on the grounds that it is not interlocutorily appealable, and then allow that case to do whatever it's going to do, either go to trial, get settled, get dismissed, final judgment entered, and then we would be able to hear your appeal with regard to the disqualification and sanctions. Two points. The stay was at the request of Mr. Lynn, because Mr. Lynn does not believe it's in his best interest to try this case. There are several issues that won't show up in the record that are implicated as far as Mr. Lynn's interests go, as far as the disqualification of counsel. And so that's a choice the client made to request that stay. Well, because he wants you back? Is that it? Yes. Okay. And I guess that takes us then back to Richardson Merrill, because that was the issue in Richardson Merrill. Should the case be stayed, because I think that's right, the counsel was disqualified, and they wanted to continue representing their client. So they tried to take an interlocutory appeal, and the Supreme Court said no. And then back to Mohawk. We get up into Mohawk. The problem is, as a court of appeals, we don't have the authority to tell the Supreme Court Mohawk is inconsistent with Richardson Merrill, and therefore will follow one but not the other. I don't think Mohawk is inconsistent with Richardson Merrill. I think Mohawk explains the third element that has to be established, and that element is present in this case. If you wanted to save five minutes, you're down to three and a half. Do you want to reserve? How about if I reserve two and a half so I can get this last point in regarding Mohawk? If you look at Model Rule Professional Conduct 1.2, and also 1.4, the allocation of authority between client and lawyer, this type of a disqualification order has a chilling effect on the discretionary decisions a client makes based on advice and consultation with a client. If there's not an immediate appeal, in other words, if there's not jurisdiction and we don't satisfy the third element of the Cohen test, then there's going to be a chilling effect where a court, as it did in this case, can reject the legal and lawful strategies chosen by the client and then implemented by his representative. Under 1.2, the client controls the objectives of litigation. Under 1.4, the client controls the objectives of litigation. So how would you be able to represent Mr. Lynn in the face of the determination by the state courts that you now suffer from an unwaivable conflict of interest given the conduct as between Lynn and, what was it? I don't think that was a determination of the state court, that there was an unwaivable conflict of interest. The problem is it's been up to the District Court of Appeal, which has affirmed the rulings of the Shasta County Superior Court. Why is that not race judicata with regard to the issue in federal court in your ability to continue to represent Mr. Lynn? Because the disqualification was from the state court. The basis for disqualification was a completely different issue than presented here. I think I've got about seven or eight grounds here that Judge Mendez relied on in his disqualification order, including the misconduct that went up on appeal to the District Court of Appeal. I don't read his order doing that. I read it specifically. I don't want to burn up any more of your time. Why don't you have a seat and let's hear from Mr. Kelly. Good morning. John Kelly for the School District, Gateway Defending. To please the Court, I find myself in a rather unusual position. I originally brought the jurisdiction issue to the attention of the Court two years ago. It was denied without prejudice to renewal and you renewed it. Here we are. Yeah. I mean, you shouldn't be hesitant about making the argument. You've been consistent throughout. Well, the reason why I'm hesitant is because of the two-year delay which Your Honor has talked about, the danger which the Supreme Court has talked about, that the matter is delayed two years. Well, we're here. We fully briefed the issues on the merits. I understand the jurisdiction issue. I understand it's not unwaivable. I understand you have to consider it. You have to review it no matter what I say. Right. But after two years of delay, we're already on it. You want an answer. I want an answer. Well, we can't do that. You know that. I know that. It's not going to happen. So what's your next point? Well, yeah. I mean, the Richardson-Merrill case is directly on point. And it says as a class disqualification motions are not appealable. That's exactly what we have here. The only potential argument that Mr. Thurman throws out is that Tallow case says that if the court finds you violated a rule of ethics, that that is appealable, but it wasn't a disqualification case. But the court here certainly did find numerous violations of rules of ethics and found it specifically said, I don't want Mr. Thurman practicing in my courtroom. So if that's not a sanction, I don't know what is. So I think we have kind of a hybrid between the pure disqualification case and the cases finding the rules of ethics. Was the case referred to the State Bar by the court? It has been reported to the State Bar, yes, Your Honor. By the court? I don't remember if the judge directed me to do so or it was done because I knew it had to be done. It had already been done because of the State cases also. And the State Bar is certainly aware of both this action and the State action. In fact, they informed me they were waiting for both appeals to run their course before they were going to take court. Oh, the State Bar is waiting for this as well? Yes. The State Bar said they were, well, when the last time I talked to them, they were waiting for both the third DCA and this court to issue a decision because they didn't want to do something and then have a court come out and say, oh, no, there wasn't any violations. This is a very unusual case. Yes, it is. I kind of, I have to say, I kind of sympathize with an attorney who's trying to represent a client. And the client comes to him and says, you know, I have some information that can help my case. It's a really, it's a conundrum for an attorney. So I'm a little bit sympathetic to the position that Mr. Thurman found himself in. I'm just questioning whether or not if he in his mind was of the view that there was nothing illegal about Mr. Lynn having taken the information from the computer system, what was the basis for the sanction at that point, if he honestly believed that there was something illegal? Well, I know the court called it a theft. I think that was stretching the definition of theft. Well, I refer you to the order on page 7. It does say the court agrees with defense position Thurman took possession of the 39,312 e-mails from Lynn, knowing Lynn had taken them from the school district illegally. Now, with that finding, an attorney has an obligation, apart from his obligation to his client, not to engage in illegal conduct. But, I mean, I'm just saying, you don't think there's any way in good faith he would have thought that Mr. Lynn was authorized as the IT director to have those e-mails? No, I do not. Maybe there's a, you can possibly, there's an argument. I don't believe there's any argument. There's an argument that when he was still IT director that he could look at e-mails. But when his employment is over, what's his right to take those with him? He has no right. You don't have the right to take any documents when you're walking out the door from your employer. I've had cases myself where my client came to me and said, I have this record statement that I took of my employer. You know, it implements them. I record it secretly. I'm like, this is illegal. You can't disclose it. We're going to have to plead the Fifth Amendment. If any questions ever come up about it, I cannot take possession of it. We're not going to deal with this. That's the correct course of action. Not to simply run off and let other clients look at it, distribute them to the public. Not even, you know, especially when there's attorney-client privilege documents. When you're talking about school district documents, I mean, there's so many privacies and confidentialities in schools. How could you not think that when your client gives you 40,000 e-mails between the superintendent, teachers, principals, that there's not going to be confidential material here? And even when the State courts told him these things were obtained improperly, he still kept them. He didn't immediately seek to return them or even to have all of them. He gave them back to Mr. Lin, knowing that we had attorney-client privilege materials on them. So, yes, there's a little bit of a dilemma when a client comes to you and says, I have this material, but this is not even a close case. I mean, Mr. Thurman, when he says, look, I've got 40,000 e-mails here, all these e-mails I've downloaded over four months of everybody in the entire school district, that should have put up so many red flags that he should have just stopped right there, not taken possession of them. He claims in various documents that he researched this issue, but he's never told us what research he did. He always claims it's a work product every time we ask him about that and refuses to say what he did. There's any basic research would just show that self-help is not condoned by the courts at all, whatsoever. The Conn case, the Pillsbury-Madison, the Sutro case, every court has found you cannot take documents walking out the door and expect to use them. It's improper. The course of action is to return them. And he didn't do that. So unless there's any other questions, like I said, I know you have to raise a jurisdiction issue. I probably agree with you, you don't have jurisdiction. But after two years, I would hope that you're flying so we can get a complete answer. Otherwise, thank you very much. All right, Mr. Ellis, thank you. Mr. Durbin, I think you have about a minute and a half. Responding directly to Dr. Olson's question, there was never any finding that Mr. Lynn ever committed a crime in this case, Your Honor. Gateway reported it to the police department immediately. The police department rejected interviewing him. He cooperated in every aspect of it. The DA's office looked at it and summarily rejected it. The reference to improperly acquired, wrongfully, unlawfully was all in reference to the discovery cases, the self-help discovery cases. The closest we had to a criminal comment was Judge Mendez's comment when he said, you may not like my characterization of it, but in my view, he stole them because he abused his position. Would you agree that it was unauthorized? No, I wouldn't agree that it was unauthorized. Gateway's management level above Mr. Lynn did not give him permission to copy them. But authorization and permission are two different things. If you look at the, if you look at Education Code section 44110 and his, the encouragement and mandate of his actions there. What do we do with the finding of fact by Judge Mendez at the disqualification hearing that the taking occurred on the night of August the 26th or the early morning hours of August the 27th after he had left on medical leave and was no longer working? He, if that may, if that's a factual finding, he may arguably, it's supported by the evidence, arguably not. We don't have the authority to question that if that, under the Hinkson standard, if that's the case. But I'm not making the connection to the issue of the disqualification piece. The disqualification was because of violating competencies and reviewing this information, which is up to Mr. Lynn to make that decision. Only if it was, I mean, if he took it without authorization, then it couldn't be, he couldn't reveal it and neither could you. That's the point. That's the connection. If he was not entitled to have this information, then he couldn't reveal it to the, his former co-worker and neither could you as the attorney. And that's why I was asking what investigation, if any, you did to determine whether or not Mr. Lynn was authorized to take this information off the computer system. I looked at the case law. I looked at the Public Records Act. I'm familiar with that. And I'm only familiar with that. I researched, refreshed my memory on the Public Records Act. The Public Records Act has a specific mechanism to get information. You have to do a request and then the agency will determine whether or not there's anything that needs to be redacted before the information is released to the public. So the Public Records Act doesn't, just because something is housed in a public agency, doesn't necessarily convert it to a public record per se. That is correct. It's an access issue. Mr. Lynn had access because he was there. The public doesn't have access. But it's a fundamental right for them to acquire that information. Beyond that, as an attorney, I take the facts, Your Honor, that my client gives me and I analyze them under the whole broad spectrum of the law. In this case, it was federal court law, which makes it a jury question whether or not his removal of those records from an employer was reasonable under the circumstances. That's the nice wonder case. The court disagreed with you on that point, though. The court thought that you violated several rules of professional conduct. What do we do with that finding by the district court? Even if we disagreed with it, at this juncture of the proceedings, can we overturn that finding? Yes. Because it's issues of law. If you look very specifically at the portion of the order that relates to disqualification, it's violation of the conflict of interest. It cites the flat case and the speedy oil case. It's right in the order and cites the disclosure of Lynn's crime and the confidentiality breach issue. Those are predicated on factual findings, though. I mean, the problem with your argument is that as I count them, we now have seven judges. Three Shasta County Superior Court judges, three judges on the district court of appeal, and a federal judge who have all found that Mr. Lynn's taking was wrongful because it occurred not when he says or when he apparently told you that it occurred earlier in the summer. All those judges have found as fact that it occurred at the end of the summer and, therefore, was wrongful. I don't see how we can disturb that finding at this stage of the litigation. If Lynn's – if Mr. Lynn's taking was wrongful, Your Honor, is he not – is the lawyer not entitled to press his claim that he had his rights to research the law and press his claim? Remember, the lawyer – Now, in the face of all of these findings that I think are preclusive with regard to the fact of the taking. But a client's wrongful acquisition, the lawyer takes the facts. This is what every lawyer – and I respect what Your Honor said. I hear what you're saying. I mean, I understand that you took your client's statement at face value. He told you he took them earlier in the summer, right? I did more than that, if you look at the record. I told him to hold them. Don't send them. No, no, no. I'm just talking about your basis to believe that you might have an argument that the taking was authorized because at the time he took them, he was still working as the ITO. Not only was he authorized, but there's legal precedent that establishes, for a host of reasons, that his act may be determined to be reasonable under federal law by a jury. I think I understand the argument. I've let you go way over. Thank you both very much. The case just argued is submitted and we will be adjourned for the day.
judges: Rice, Tallman, Rawlinson